UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X

FERNANDO NOOR,                          :     Case No.: _____
                                        :
                   Plaintiff,           :     **COMPLAINT**
                                        :
         -against-                      :     **DEMAND FOR JURY TRIAL**
                                        :
CHURCHILL CAPITAL CORP III, MICHAEL :
KLEIN, JEREMY PAUL ABSON, GLENN         :
AUGUST, MIKE ECK, BONNIE JONAS,         :
MARK KLEIN, MALCOLM S. MCDERMID,        :
and KAREN MILLS,                        :
                                        :
                   Defendants.          :
-------------------------------------- X

Plaintiff, Fernando Noor ("Plaintiff"), by her undersigned attorneys, alleges upon personal

knowledge with respect to herself, and information and belief based upon, *inter alia*, the

investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This is an action brought by Plaintiff against Churchill Capital Corp III ("Churchill"

or the "Company") and the members of the Company's board of directors (collectively referred to

as the "Board" or the "Individual Defendants" and, together with Churchill, the "Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection

with the proposed merger (the "Proposed Merger") between Churchill and MultiPlan, Inc.

("MultiPlan"). Plaintiff also asserts a claim against the Individual Defendants for breaching their

fiduciary duty of candor/disclosure under state law.

2.       On July 12, 2020, Churchill entered into an Agreement and Plan of Merger (the

"Merger Agreement"), pursuant to which Churchill will acquire MultiPlan for $5,678,000,000 in

a combination of stock and cash consideration. (the "Merger Consideration"). The Combined Company will continue to operate as Multiplan and trade on the NYSE under the ticker symbol "MPLN." After the closing of the Proposed Merger, Churchill's public common stockholders will only retain an ownership interest between 4.2%-16.0% in the post-combination company.

3.      On July 31, 2020, in order to convince Churchill shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading proxy statement (the "Proxy") with the SEC in violation of Sections 14(a) and 20(a) of the Exchange Act and in breach of the Individual Defendants' duty of disclosure.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the process and background of the Proposed Merger; (ii) the financial advisors employed by the Company including, The Klein Group, LLC ("KG") a wholly owned subsidiary of M. Klein and Company, Citigroup, Inc. ("Citi"), and Goldman Sachs (collectively, the "Financial Advisors"); and (iii) the financial projections for MultiPlan.

5.      The special meeting of Churchill shareholders to vote on the Proposed Merger is forthcoming (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and breach of the duty of disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to Churchill's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange

2

Act and breach of the duty of disclosure.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

10.     Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because the Company's principal executive office is located in this District at 640 Fifth Avenue, 12th Floor, New York, NY 10019 and Defendants are found or are inhabitants or transact business in this District. Multiplan's and the Combined Company's principal executive office is (will be) also located in this District at 115 Fifth Avenue, New York, NY 10003.

**PARTIES**

11.     Plaintiff is, and at all relevant times has been, a holder of Churchill common stock.

12.      Defendant Churchill is a blank check company formed in order to effect a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or other similar business combination with one or more businesses or entities. The Company's principal executive office is located at 640 Fifth Avenue, 12th Floor, New York, NY 10019. Churchill was incorporated under the laws of Delaware on October 30, 2019. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "CCXX".

13.     Individual Defendant Michael Klein is the Company's founder has been the Chief Executive Officer ("CEO") of the Company and Chairman of the Board at all relevant times. He is also the founder and managing partner of M. Klein and Company.

14.     Individual Defendant Glenn August has served as director of the Company at all relevant times.

15.     Individual Defendant Mike Eck has served as director of the Company at all relevant times. He is also a Managing Director at M. Klein and Company.

16.     Individual Defendant Bonnie Jonas has served as director of the Company at all relevant times.

17.     Individual Defendant Mark Klein has served as director of the Company at all relevant times. He is also a Managing Member and Majority Partner of M. Klein & Company.

18.     Individual Defendant Malcolm S. McDermid has served as director of the Company at all relevant times.

19.     Individual Defendant Karen Mills has served as director of the Company at all relevant times.

20.     The Individual Defendants referred to in ¶¶ 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with Churchill they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

21.     Churchill is a financial services company that provides brokerage and related products and services. The Company focuses on delivering its digital solutions for traders, investors, advisors, and stock plan administrators and participants. It provides services to customers through its digital platforms and network of industry-licensed customer service representatives and financial consultants, over the phone, by email and online via two national financial centers and in-person at approximately 30 regional financial centers across the United States. The Company operates its federally chartered savings banks for the purpose of deposits generated through its brokerage business.

22.     MultiPlan provides healthcare cost management solutions, specializing in providing claim cost management solutions for controlling the financial risks associated with medical bills. MultiPlan also offers primary preferred provider organization (PPO) network solutions for accessing hospitals, ancillary care facilities, and healthcare professionals in the United States. Multiplan is majority owned and controlled by Hellman & Friedman.

23.     On July 12, 2020, Churchill issued a press release announcing the Proposed Merger, which states in relevant part:

**MultiPlan and Churchill Capital Corp III Reach Agreement to Combine**

-   *Transaction Will Deliver Financial Flexibility to Fuel MultiPlan's Significant Organic and Acquisition Growth Opportunities*

-   *MultiPlan Brings Affordability and Fairness to the Healthcare System,*

*Delivering Approximately $19 Billion in Medical Cost Reduction on over 135 Million Claims*

  *-   MultiPlan's Value to Healthcare Payers Will Be Enriched by Three Key Growth Pillars: Enhancing, Extending and Expanding Capabilities and Services*

  *-   Current MultiPlan Management Will Continue to Lead the Company*

  *-   Transaction Includes $1.3 Billion Fully Committed Common Stock at $10 Per Share and $1.3 Billion Convertible Debt, Convertible at $13 Per Share*

  *-   Investor Call on Monday, July 13, 2020 at 8:00 am EST*

NEW YORK, NY — July 12, 2020 — Churchill Capital Corp III ("Churchill") (NYSE: CCXX), a public investment vehicle, and MultiPlan, Inc. ("MultiPlan"), a market-leading, technology-enabled provider of end-to-end healthcare cost management solutions, announced today that they have entered into a definitive agreement to merge. The combined company will operate as MultiPlan and will be listed on the NYSE. The transaction implies an initial enterprise value for MultiPlan of approximately $11 billion or approximately 12.9x estimated 2021 Adjusted EBITDA. The transaction will bring to MultiPlan up to $3.7 billion of new equity or equity linked capital to substantially reduce its debt and fund new value-added services.

MultiPlan will continue to operate its business with a relentless focus on delivering service excellence to its payer customers. The existing management team, led by long-standing CEO Mark Tabak, CFO David Redmond and Chief Revenue Officer Dale White, will continue to lead the business, and Hellman & Friedman affiliates ("H&F") will remain MultiPlan's largest shareholder.

The capital from this transaction, combined with Churchill's expertise, will enable MultiPlan to continue to enhance its core offerings to payers through a significant increase in its data analytics platform, extend into new payer customer segments and expand its platform, increasing the value MultiPlan provides to more than 700 payers, their 60 million consumers and MultiPlan's 1.2 million providers that serve them. Further, the transaction will better position MultiPlan to capitalize on the entire $50 plus billion total addressable market, rather than its current subset of $8 billion, organically and through M&A.

Mark Tabak, CEO of MultiPlan, stated, "I'm tremendously proud of the role MultiPlan plays in driving order, efficiency and fairness in healthcare payments. This transaction allows us to create payer value beyond the tech-enabled cost management and payment integrity services we offer today. As a public company, MultiPlan will have greater strategic and financial flexibility, making it better equipped to expand organically, through adjacent acquisitions and by investing in new technologies. We will deliver even more value for healthcare payers in

6

particular, but also for their consumers and providers."

Allen Thorpe, Partner at Hellman & Friedman, said, "MultiPlan's performance as a privately held company has been outstanding. This transaction strengthens the Company and will allow it to further penetrate the broad and fast-growing healthcare market, driving efficiencies and cost savings that benefit the sector and deliver great outcomes for payers, providers and consumers." He further added, "We are excited to join forces with the Churchill team and continue our partnership with MultiPlan to deliver value for its many customers."

"We are pleased to partner with MultiPlan to drive its next phase of growth. MultiPlan is on the right side of healthcare, significantly reducing costs to insurers, employers and consumers," said Michael S. Klein, Chairman and CEO of Churchill. "MultiPlan has an unmatched, long-term track record of customer satisfaction and delivering high returns to investors. This transaction will enable the Company to enhance its capital structure and position it for substantial incremental growth. MultiPlan fits perfectly with Churchill's core mission to provide intellectual and financial capital to power the growth of great, market leading companies who operate in attractive industries, and can succeed more rapidly in the public markets with increased capital and the benefit of Churchill's Operating and Strategic Partners."

MultiPlan pioneered innovative and mission-critical transaction processing services for healthcare payers, including the industry's largest independent preferred provider network, that reduce medical spend, improve payment accuracy and advance their competitive position. MultiPlan's data- and technology-driven services leverage the Company's 40 years of claim data, national reach, expansive provider network, strong relationships, innovative intellectual property and modern scale technology platform to create value for all stakeholders in the healthcare ecosystem. Further, MultiPlan brings affordability and fairness, delivering approximately $19 billion in medical cost reduction on over 135 million claims – bringing savings to payers and consumers alike.

Churchill Capital Corp III is a NYSE listed, $1.1 billion, equity growth investment company and is the third vehicle in the Churchill Capital group of companies. Churchill's strategy is to identify and complete initial business combinations with unique, leading companies in growing industries that will be catalyzed by the growth capital and transparency of the public equity markets and will be enhanced by the experience and expertise of Churchill's Operating and Strategic Partners, a group of leading Fortune 500 CEOs with exceptional shareholder value creation track records who invest directly in Churchill and are committed to assist MultiPlan in its next phase of growth.

**Summary of Transaction**

Churchill will contribute up to $1.1 billion of cash raised during its initial public

offering in February 2020. Further, additional investors have committed to participate in the transaction through PIPE commitments to a $2.6 billion new private capital raise consisting of a $1.3 billion common stock at $10 per share and $1.3 billion of 6 percent interest convertible debt, with a conversion price of $13 per share. The convertible debt provides flexible capital, including a non-cash pay option.

The total investment of up to $3.7 billion raised in this transaction will be used to pay down existing debt, purchase a portion of the equity owned by existing MultiPlan shareholders and capitalize the MultiPlan balance sheet. As a result of this transaction, MultiPlan's leverage will be significantly reduced and its existing Net Debt to Adjusted EBITDA ratio will be reduced from 6.8x to approximately 5.8x with its Net Debt to Adjusted EBITDA at the operating company level decreasing to 4.1x1. The additional capital and public stock currency will allow the Company to advance its strategy of investing in organic and acquisition growth, and to increase its investment in data, machine learning and artificial intelligence technologies.

In connection with the transaction, Churchill's sponsor has entered into an agreement to amend the terms of its founder equity to align with the long-term value creation and performance of MultiPlan. Churchill 's sponsor has agreed that a portion of its equity will vest only if the share price of the Company exceeds $12.50 per share over a period between the first and fifth anniversaries of the closing of the transaction, and have agreed not to transfer unvested equity. Churchill has received commitments from its investors and the new PIPE investors for funding that is sufficient to close the transaction.

The Boards of Directors of both Churchill and MultiPlan have unanimously approved the proposed transaction.

The transaction is expected to be completed by the end of October 2020, subject to approval by Churchill stockholders representing a majority of the outstanding Churchill voting power, the expiration of the HSR Act waiting period and other customary closing conditions.
. . .
**Advisors**

Citigroup is serving as the private placement agent and capital markets advisor to Churchill. Citigroup and Goldman Sachs served as financial advisors and Weil, Gotshal & Manges LLP served as legal counsel to Churchill. Credit Suisse served as a capital markets advisor to Churchill. Citigroup and Goldman Sachs were joint book running managers for Churchill Capital Corp III.

Centerview Partners, Barclays, BofA Securities and UBS Investment Bank served as financial advisors to MultiPlan. Kirkland & Ellis and Simpson Thacher & Bartlett served as legal counsel to MultiPlan and H&F.

**II.      The Proxy Omits Material Information**

24.      On July 31, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Background of the Merger

25.      The Proxy contains a misleadingly incomplete summary of the events leading up to the Merger, which omits material facts. Once a company travels down the road of partial disclosure of the history leading up to a merger, they had an obligation to provide shareholders with an accurate, full, and fair characterization of those historic events. Even a non-material fact can trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders.

26.      Here, the Proxy on page 100 states that: representatives of the Company contacted and were contacted by individuals and entities with respect to acquisition opportunities; the Company evaluated several dozen potential acquisition targets; and representatives of the Company met and conducted preliminary discussions with representatives of, and commenced initial preliminary due diligence on, several potential target opportunities.

27.      However, the Proxy omits whether in performing this due diligence, the Company entered into any non-disclosure or confidentiality agreements. And if so, what the terms of those confidentiality agreements were, including whether they included any standstill, don't ask don't waive ("DADW"), or similar provisions. And if not, the identities of the companies and

opportunities, and results of the due diligence, that Churchill shareholders would be foregoing to accept the Proposed Merger.

28.    Information relating to NDAs or confidentiality agreements entered into between companies in a sales process is very important to shareholders, because certain provisions of those agreements can greatly alter the bargaining power of the parties involved. If such agreements are in place, shareholders must be made aware.

29.    Alternatively, if the information is not protected by NDAs or confidentiality agreements, it speaks squarely to the decision shareholders are seeking to answer in determining whether to vote in favor of the Proposed Merger: is *this* merger the best option for the Company going forward. This is especially true here, where the Company was created entirely for the purpose of executing a merger with a private company, and, thus, shareholders in purchasing Churchill stock essentially purchased the right to vote on which merger the Company would execute.

30.    Moreover, the Proxy discusses the composition of the combined company Board throughout the document and lists it as a "material" factor in recommending that shareholders vote in favor of the Proposed Merger. Yet, the Proxy fails to disclose the timing and nature of the negotiations leading to the determination of the board seats for the combined company. Such information is important to shareholders because negotiating for Board seats is a conflict of interest that could cause directors to value their own continued involvement in the Company over the value offered to shareholders.

31.    Accordingly, the omission and/or partial disclosure of this information renders the summary provided in the Proxy misleadingly incomplete.

<u>The Misleadingly Incomplete Information Regarding the Financial Advisors</u>

32.     The Proxy omits material information about the financial advisors, their relationships, and their roles in the events leading up to the Proposed Merger.

33.     First, the Proxy entirely omits Goldman Sachs' role as a financial advisor or their involvement with the events leading up to the Proposed Merger. The Proxy also fails to state the historical relationship between Goldman Sachs on the one hand, and the Company, the Individual Defendants, MultiPlan, H&F, or any affiliates thereof on the other.

34.     Second, the Proxy states that KG met with the Board on June 30, July 6, July 9, and July 12, but fails to describe the work they performed in order to receive the $30+ million in fees they are scheduled to receive. This information is particularly concerning to shareholders given the close ties between KG and the Individual Defendants—Chairman and CEO Klein owns KG. The Proxy also fails to state the historical relationship between KG on the one hand, and the Company, the Individual Defendants, MultiPlan, H&F, or any affiliates thereof on the other.

35.     Further, the Proxy fails to disclose any analyses performed by KG in support of its views on the valuation of the MultiPlan business implied by the terms of the potential business combination and the potential benefits to stockholders of Churchill of such a transaction. Such information is plainly material to Churchill shareholders and strikes at the heart of the decision they are being asked to make.

36.     Third, the Proxy states that Citi acted as a financial advisor for the Company, including:

- At the Board meeting on July 6, 2020, Citi discussed with the Churchill Board their preliminary views on the valuation of the MultiPlan business implied by the terms of the potential business combination, the potential benefits to stockholders of Churchill of such a transaction, as well as the potential reaction in the capital markets to the Transactions, including the potential impact on Churchill's stock price as a result of consummating such a transaction.

- At the Board meeting on July 9, 2020, Citi reviewed with the Churchill Board Citi's perspective on MultiPlan's valuation as implied by the terms of the proposed transaction, including the PIPE Investment, how that valuation compared to similar companies, the benefits to Churchill stockholders of consummating such a transaction, the potential reaction in the capital markets to the Transactions, including the potential impact on Churchill's stock price as a result of consummating such a transaction, and the potential for growth of MultiPlan's business through acquisition.
- At the Board meeting on July 12, 2020, a the final meeting before approving the Merger Agreement, Citi reviewed with the Churchill Board the strategic rationale for the transaction, as well as their perspective on MultiPlan's valuation as implied by the terms of the proposed transactions, including the PIPE Investment, and how that valuation compared to similar companies, the benefits to Churchill stockholders of consummating such a transaction, the potential reaction in the capital markets to the Transactions, including the potential impact on Churchill's stock price as a result of consummating such a transaction, and the potential for growth of MultiPlan's business through acquisition.

37.    However, the Proxy fails to state the compensation Citi received for acting as a financial advisor, or the historical relationships between Citi on the one hand, and the Company, the Individual Defendants, MultiPlan, H&F, or any affiliates thereof on the other. Disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the company it advises, or its related affiliates, is required pursuant to 17 C.F.R. § 229.1015(b)(4). Moreover, it is important for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor might have.

38.    Further, the Proxy fails to disclose any analyses performed by Citi in support of its views on the valuation of the MultiPlan business implied by the terms of the potential business combination and the potential benefits to stockholders of Churchill of such a transaction. Such information is plainly material to Churchill shareholders and strikes at the heart of the decision

they are being asked to make.

39.     The Proxy provides a single Comparable Company Analysis considered by the Board in making its decision that the Proposed Merger was in the best interests of Churchill shareholders, but fails to disclose who performed the analysis or presented it to the Board.

The Misleadingly Incomplete Financial Projections

40.     The Proxy omits critical financial projections for MultiPlan, including net income projections (which was readily available and necessary to calculate disclosed metrics), the projections actually prepared by MultiPlan, projections for any year beyond 2021, and forecasts other than the those presented on page 110 of the Proxy (the "Omitted Projections").

41.     On page 109 the Proxy states that MultiPlan provided Churchill with internally prepared forecasts, including for calendar year 2021, and that MultiPlan prepared multiple models. However, the Proxy only discloses to shareholders the 2021 metrics for revenue, adjusted EBITDA, and levered free cash flow adjusted by Churchill management to take into consideration the consummation of the Transactions. It omits all other financial models, metrics, or forecasted years.

42.     Defendants elected to summarize MultiPlan's financial projections, but they excised and failed to disclose the Omitted Projections. By disclosing certain projections in the Proxy and withholding the Omitted Projections, Defendants render the table of projections on page 110 of the Proxy materially incomplete and provide a misleading valuation picture of MultiPlan.

43.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not

the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections provided to and relied upon by the Board but failed to disclose the Omitted Projections. This omission renders the summary of the projections table and the MultiPlan's financial picture in the Proxy misleadingly incomplete.

44.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure.  Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
## Against All Defendants for Violations of Section 14(a) of the Exchange Act

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48.     Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR § 229.1015.

49.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

50.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the background of the merger; (ii) the financial advisors; and (iii) MultiPlan's financial projections.

51.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts

existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

52.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided them.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

53.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were

intricately involved in the process leading up to the signing of the Merger Agreement.

54.     Churchill is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

55.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of Churchill's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**<u>COUNT II</u>**
**<u>Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act</u>**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Churchill within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in preparing this document.

60.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III
### Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure

64.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

66.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

67.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

68.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of Churchill shareholders to vote on the Proposed

Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.       Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.       Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 20, 2020                        **MONTEVERDE & ASSOCIATES PC**

                                                          */s/ Juan E. Monteverde*
                                                          Juan E. Monteverde (JM-8169)
                                                          The Empire State Building
                                                          350 Fifth Avenue, Suite 4405
                                                          New York, NY 10118
                                                          Tel: (212) 971-1341
                                                          Fax: (212) 202-7880
                                                          Email: jmonteverde@monteverdelaw.com

                                                          *Attorneys for Plaintiff*